705 S.E.2d 569

**STATE of West Virginia ex rel. TRISTEN K., Petitioner,**

v.

**Honorable David R. JANES, Judge of the Circuit Court of Marion County, and the West Virginia Department of Health and Human Resources, Respondents.**

**No. 35718.**

Supreme Court of Appeals of West Virginia.

Nov. 17, 2010.

**Memorandum Order**

On October 27, 2010, this Court issued a rule to show cause against the respondent,

the Honorable David R. Janes, Judge of the Circuit Court of Marion County, as a result of a petition for writ of prohibition filed by the guardian ad litem (hereinafter "guardian") for the minor child, Tristen K.[1] (hereinafter "Tristen" or "minor"). The requested writ is based on an order, rendered orally by the lower court on September 9, 2010,[2] which granted a ninety-day, pre-adjudicatory improvement period for Tristen's biological parents: Joshua K. (hereinafter "Joshua" or "father") and Alexsis S. (hereinafter "Alexsis" or "mother"). The guardian requests this Court to prohibit the granting of the pre-adjudicatory improvement periods so that the case may proceed immediately to adjudication.[3] Pursuant to a request under Rule 14(b) of the Rules of Appellate Procedure came the respondent, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), and filed its response. Having thoroughly considered the matters raised in the petition, the response thereto, the oral arguments of counsel, and the applicable law, we determine that the issue is moot. Accordingly, the petition is dismissed, and the writ is denied.

Factually, the minor, Tristen, who is the subject of the underlying action, was born August 5, 2009, to Alexsis and Joshua. The DHHR filed a petition for abused or neglected children on January 5, 2010. The petition alleged that Joshua puts his hand over Tristen's mouth to keep him from crying, that he yells at him to be quiet and calls him a "f*cking retard," and that he picks the baby up by the baby's shirt and lets his head fall back. The father admitted to the police that he covers the baby's mouth with his hand and that he took Tristen into the woods to go "coon hunting." The mother, Alexsis, admitted that she allows Joshua to cover Tristen's mouth with his hand and that she has heard the profanities used by Joshua toward Tristen. It also was alleged that Alexsis would hold the baby without supporting his head. Based on the allegations in the abuse and neglect petition, Joshua and Alexsis were arrested for child abuse. Alexsis posted bond prior to the preliminary hearing. Joshua did not post bond until the following summer.

Alexsis filed a motion for a pre-adjudicatory improvement period on January 14, 2010. The preliminary hearing was held January 15, 2010, at which time both Alexsis and Joshua waived their rights to a preliminary hearing. An adjudicatory hearing was set for March 15, 2010; however, the date had to be rescheduled to May 6, 2010, due to a trial in the lower court that had not finished in the time expected. On March 16, 2010, Alexsis re-filed her motion for a pre-adjudicatory improvement period. A hearing was held May 6, 2010, for the purposes of adjudication; however, because the North Central Regional Jail failed to transport Joshua to the hearing, it was continued without objection from any of the parties. During the May 6th hearing, the DHHR informed the court that Alexsis was participating in services and following all recommendations of the multidisciplinary team (hereinafter "MDT"). The adjudicatory hearing was rescheduled to July 1, 2010.

In the interim, the lower court held a review hearing on June 1, 2010. The DHHR again reported that Alexsis was participating in all services and following all of the MDT's recommendations. Further, it was reported

---

1. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

2. There is no disagreement as to the terms of the oral order by the circuit court. This Court notes that, prior to the oral arguments before this Court, a written order memorializing the oral mandate was received. It was dated November 9, 2010, and entered into the records of the circuit clerk's office that same date.

3. During oral arguments before this Court, the guardian conceded that the parents have a right to an improvement period; however, the guardian's issue with the granting of the pre-adjudicatory improvement period lies in the fact that the lower court continually delayed the adjudicatory hearing and then granted a pre-adjudicatory improvement period after the already-substantial delays in the petition. The guardian argued that the case should proceed immediately to adjudication and that a post-adjudicatory improvement period could be requested and granted, if appropriate.

that Joshua was not participating in services due to his incarceration, but that services would be offered upon his release. The July 1, 2010, scheduled hearing was rescheduled due to the unavailability of a material witness. The new date was set for September 9, 2010. Prior to the hearing, on September 6, 2010, Joshua filed a motion for a pre-adjudicatory improvement period.

The lower court held a hearing on September 9, 2010, and considered the motions for pre-adjudicatory improvement periods filed by both Alexsis and Joshua. The DHHR represented that it was in accord with the granting of the requested improvement periods because both parents were participating in services and following the MDT's recommendations. The guardian, however, objected to the granting of the requested pre-adjudicatory improvement periods because of the eight-month delay between the inception of the abuse and neglect case and the date of the hearing. The circuit court granted a ninety-day pre-adjudicatory improvement period to each parent. It is from this order granting the pre-adjudicatory improvement periods that the petitioner seeks a writ of prohibition from this Court so that the case may proceed to adjudication.

■■■ Generally, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code* 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977). In the underlying case, the argument revolves around the granting of pre-adjudicatory improvement periods and the guardian's disagreement therewith based on the guardian's position that the case should have proceeded to adjudication. Based on the lower court's order, an adjudicatory hearing is set for November 29, 2010, and it is reported that the parents are doing well participating in their improvement periods.[4] The parties indicated, during oral argument before this Court,

that the hearing had actually been set since the September 9, 2010, hearing. As such, the guardian's requests for relief from this Court has become moot. "Courts will not ordinarily decide a moot question." Syl. pt. 1, *Tynes v. Shore,* 117 W.Va. 355, 185 S.E. 845 (1936). "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908). Accordingly, because an adjudicatory hearing is already set to convene November 29, 2010, which will also evaluate the success of the pre-adjudicatory improvement periods, we find the issues before this Court to be moot.

While the guardian's requests are moot, we remain troubled by the expanse of time involved in this case and feel compelled to remind the lower court of the time frames involved in abuse and neglect cases, as well as the priority that should be placed on such cases. The petition was filed January 5, 2010, and the adjudicatory hearing, wherein the pre-adjudicatory improvement periods were granted, did not occur until eight months later on September 9, 2010, with the result of that hearing being a granting of pre-adjudicatory improvement periods and the setting of a new date for adjudication on November 29, 2010.

As set forth in the statutory law:

Any petition filed and any proceeding held under the provisions of this article shall, to the extent practicable, be given priority over any other civil action before the court, except . . . actions in which trial is in progress. Any petition filed under the provisions of this article shall be docketed immediately upon filing. . . .

*W. Va. Code* § 49–6–2(d) (2006) (Repl. Vol. 2009). This Court has explained that

[t]he clear import of the statute [West Virginia Code § 49–6–2(d) ] is that matters

---

4. It is also recognized that no party had a need to request early termination of the improvement periods as is contemplated by W. Va. Code § 49-6-12(h) (1996) (Repl. Vol. 2009), which provides that "[u]pon the motion by any party, the court

shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period."

involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible.

Syl. pt. 5, *In Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991). "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security...." Syl. pt. 1, in part, *Carlita B., id.* Prompt resolution in such cases serves as a protection for children from the turmoil associated with the lack of stability in their surroundings and in their caretakers. *See* Syl. pt. 3, in part, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991) ("It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians.").

Accordingly, while we do not condone the delays involved in the underlying case, we hereby find that the issues presented in the requested writ are moot as a result of the scheduled adjudicatory hearing set for November 29, 2010. Therefore, the writ of prohibition is denied.

Writ Denied.