No. 15-0708 - In re: S.H.

**FILED**

**June 16, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, Justice, concurring in part, dissenting in part:

I concur with the majority's conclusion that the circuit court correctly adjudicated S.H. as an abused child at the hands of her grandmother, the petitioner M.H. However, by reversing the termination of guardianship and reinstating the petitioner's post-adjudicatory improvement period, the majority has cavalierly disregarded the petitioner's abusive conduct and criminal conviction. This Court on appeal "may not overturn a finding simply because it would have decided the case differently[.]" Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). Because the appendix record includes more than sufficient evidence to support all of the circuit court's rulings, and those rulings are clearly in the child's best interests, I dissent to the majority's discussion and resolution of the improvement period and termination issues.

S.H. has been the subject of abuse and neglect proceedings since 2011, when she was born addicted to drugs and had to spend the first two months of her life in a neonatal intensive care unit. In November of 2012, the biological parents agreed to voluntarily relinquish their custodial rights to S.H. As a result, the circuit court awarded legal guardianship of the child to the petitioner.[1] Unfortunately, the abuse and neglect of S.H. did

---

[1]Although the appendix record does not contain all of the materials from the 2012 petition, it is presumed that the circuit court permitted the parents to retain their parental rights, while relinquishing their custodial rights, pursuant to the court's authority in West

1

not end. The petitioner allowed the child's mother, N.H., to live in their home and, although N.H. was serving a period of home incarceration, she continued to use drugs.[2] It was also discovered that the petitioner was in possession of, and using, illegal drugs in the home. When N.H.'s home incarceration officer made an unannounced visit to the home on August 21, 2014, four bags of marijuana totaling 1.7 pounds were found, unconcealed, on the floor of the petitioner's bedroom closet. The marijuana was in a location easily accessible to the child. Drug paraphernalia was also found in the home: a pipe and wrapping papers were under the petitioner's bed, and two syringes were in N.H.'s purse.

When interviewed later that day, the petitioner lied and denied ownership of the marijuana in her closet. However, she admitted that she had smoked marijuana in the prior two weeks, that she would test positive if tested for drugs, and that she used marijuana "every week or so" as a social activity. Because of the marijuana in her closet, the petitioner was charged with felonious possession with intent to deliver a controlled substance. Subsequently, she conceded that the marijuana did, in fact, belong to her. On February 20, 2015, pursuant to a negotiated plea agreement, the petitioner pled guilty to misdemeanor

---

Virginia § 49-6-5(a)(5) (2012): "Upon a finding that the abusing parent . . . or parents are presently unwilling or unable to provide adequately for the child's needs, [the court may] commit the child temporarily to the custody of . . . a suitable person who may be appointed guardian by the court." The circuit court subsequently, in 2015, terminated all of the biological parents' rights.

[2]Upon being taken into custody on August 21, 2014, N.H. tested positive for marijuana and Suboxone.

2

possession of marijuana in a quantity greater than fifteen grams. Without mentioning her previously-disclosed social usage of illegal drugs, she told the court in her criminal case that she prepared and consumed baked goods containing marijuana in order to self-medicate pain. The court sentenced the petitioner to ninety days in jail, but then suspended the jail sentence and placed her on probation for two years. The petitioner has refused to reveal the source for her large stash of marijuana, even when questioned under oath after her criminal case was resolved.

The majority of the Court has concluded that the circuit court improperly revoked the petitioner's post-adjudicatory improvement period because she passed drug tests and performed tasks the DHHR asked of her. However, revocation is permissible even when there has been compliance with specific tasks:

> [I]t is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting." Thus, a judgment regarding the success of an improvement period is within the [circuit] court's discretion regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.

*In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991) (quoting *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Here, the circuit court revoked the petitioner's improvement period immediately upon her

3

conviction for a drug crime.[3]  Until then, the criminal charges were simply allegations and, due to the petitioner's initial dishonesty, there had been misinformation about the ownership of the marijuana.

Important to the circuit court's decision, but overlooked by the majority, is that the petitioner was the child's guardian, not the child's biological or adoptive parent.  As such, she was afforded the statutory right to be heard in an adjudicatory hearing,[4] and she was among the class of persons who could be adjudicated as abusive of this child.[5]  However, a court-appointed guardian does not have the same rights as a biological or adoptive parent has.  *See In re D.B.J.*, 286 P.3d 1201, 1207 (Mont. 2012) (concluding that removal of guardian is distinct from termination of parent-child relationship; guardian does not possess due process rights equivalent to those of parent).  Moreover, even a parent "is not unconditionally entitled

---

[3]The circuit court learned of the conviction during a status hearing that the court was statutorily-required to hold for the purpose of reviewing the ongoing improvement period.  *See*, W.Va. Code § 49-6-12(b)(3) (2012).

[4]"[T]he party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard[.]" W.Va. Code § 49-6-2(c) (2012), now codified in W.Va. Code § 49-4-601(h) (2015).  *Accord In re A.H.*, Nos. 15-0828 & 15-0832, 2016 WL 1602944 (W.Va. Apr. 21, 2016) (memorandum decision) (concluding that relatives holding legal guardianship of one child and custodianship of other child were entitled to abuse and neglect adjudicatory hearing).

[5]"Abused child" is defined to include a child harmed or threatened by "a parent, guardian or custodian[,]" while "abusing parent" is "a parent, guardian or custodian . . . whose conduct . . . has been adjudged . . . to constitute child abuse or neglect." W.Va. Code § 49-1-3(1), (2) (2012), now codified, with minor changes, in W.Va. Code § 49-1-201 (2015), in part.

4

to an improvement period.'" *In re M.M.*, 236 W.Va. 108, __, 778 S.E.2d 338, 345 (2015) (quoting *In re Charity H.*, 215 W.Va. 208, 216, 599 S.E.2d 631, 639 (2004)). In light of the finding of child abuse, and upon the petitioner's criminal conviction, the circuit court was completely within its discretion to revoke the petitioner's improvement period.

The majority of the Court is also wrong for not affirming the termination of the petitioner's guardianship. The petitioner's appointment as the child's legal guardian was the court-ordered disposition for the initial abuse and neglect petition. As such, the circuit court was free to modify that disposition upon finding "clear and convincing evidence [of] a material change of circumstances and that the modification is in the child's best interests[.]" W.Va. Code § 49-4-606(a) (2015). The petitioner's conduct, adjudication as abusive, and criminal conviction most certainly constituted a material change of circumstances adverse to the child's best interests. Drug use triggered the abuse and neglect petition against the child's biological mother in 2011 and, obviously, the purpose of awarding legal guardianship to the petitioner was to remove S.H. from a drug-fueled environment. Unfortunately, we now know that the petitioner also used and possessed illegal drugs; maintained a substantial quantity of marijuana within easy reach of the child; used the marijuana in baked goods, which could be enticing to a child; permitted the child's drug-using mother to reside in the home with them; and was herself convicted of a drug crime. In light of these facts, any reasonable person would conclude that S.H.'s "health or welfare [was] . . . threatened" by the

5

petitioner's actions. *See* W.Va. Code § 49-1-201 (2015) (defining "abused child" to include the threat of harm, not just infliction of harm). Children should be protected from drugs, not placed in situations where they have easy access to illegal and dangerous substances that could be ingested. *See State v. Graham*, 109 P.3d 285 (N.M. 2005) (affirming conviction for child abuse where defendant left marijuana in close proximity to young children, even though no evidence children touched drugs).

Although the petitioner may have complied with her improvement period until her criminal conviction, that is not determinative of the final disposition. Even when parental rights, not simply guardianship rights, are at issue, we have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014); *accord In re Frances J.A.S.*, 213 W.Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent [or guardian] has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child.").

The circuit court considered all of the evidence and ruled that termination of

the guardianship was in S.H.'s best interests. S.H. will soon be five years old. As the circuit court noted, she

> has been in an unstable and unsafe home since birth. She is entitled to, and needs, stability. She needs to live without fear of being disrupted by repeated substance abuse episodes and also [without] having the intervention of child protective service workers in her home as many times as she [has] had in her short life.

The circuit court's knowledge of S.H., and of S.H.'s best interests, was garnered from years of presiding over the child's abuse and neglect matters. *See In re C.M.*, 235 W.Va. 16, 30, 770 S.E.2d 516, 530 (2015) (Loughry, J., dissenting) (expressing concern that majority ignored best interests of child; noting circuit court's well-supported decision was based on years of involvement in child's abuse and neglect matter). The circuit court used that knowledge to determine, correctly, that termination of the petitioner's guardianship was in S.H.'s best interests. Now that the parental rights of S.H.'s biological parents have been terminated, this case should proceed to a suitable adoption for S.H., not to another post-adjudicatory improvement period for an abusive legal guardian.

Finally, I am very troubled by the majority's dilatory handling of this appeal. All of the appellate briefs were filed by early November, 2015, and oral argument was held on January 12, 2016, the first argument docket of this Term of Court. At the conclusion of oral argument, the case was submitted for decision. Nonetheless, it took the majority five full months to issue its opinion. Such a delay can seem like a lifetime to a young child,

7

particularly when the child has been removed from her home.[6] This delay is also contrary to Rule 49 of the Rules of Procedure for Child Abuse and Neglect Proceedings: "The Supreme Court of Appeals shall give priority to appeals of child abuse and/or neglect proceedings . . . and shall establish and administer an accelerated schedule in each case, to include the . . . decision." This Court has repeatedly admonished circuit courts that abuse and neglect cases "shall take precedence over almost every other matter" and "must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991); *e.g., Tiffany Marie S.*, 196 W.Va. at 230, 470 S.E.2d at 184; *State ex rel. Tristen K. v. Janes*, 227 W.Va. 62, 64-65, 705 S.E.2d 569, 571-72 (2010). Unfortunately, the majority failed to follow its own cautionary tale when handling the instant appeal.

While the majority correctly affirmed the circuit court's adjudication of the petitioner as abusive, it ignored the circuit court's other well-supporting findings of fact and conclusions of law. Moreover, by remanding for another post-adjudicatory improvement period, and because of the lazy time frame used to decide this appeal, the majority has delayed S.H.'s opportunity to receive the stability and permanency she deserves. Accordingly, I concur, in part, and dissent, in part.

---

[6]S.H. has been removed from the petitioner's home and placed with the interveners since the abuse and neglect petition was filed in September of 2014.