**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.M., T.C.-1, T.C.-2, and W.C. III**

**No. 20-0829** (Kanawha County 19-JA-71, 19-JA-72, 19-JA-73, and 19-JA-524)

## MEMORANDUM DECISION

Petitioner Mother C.M., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's September 29, 2020, order terminating her parental rights to T.M., T.C.-1, T.C.-2, and W.C. III.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, J. Rudy Martin, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the father of T.M., T.C.-1, and T.C.-2 in January of 2019, alleging that the children, then between the ages of four and five, were found outside, alone and unkempt at 4:00 am. Petitioner was living with the father and the children at the time. Specifically, the DHHR alleged that it had difficulty contacting petitioner because the children could not articulate their parents' names or recall where they lived. According to the petition, the father had been arrested several months earlier and charged with being a prohibited person in possession of firearms and possession of a controlled substance after law enforcement recovered two firearms and methamphetamine in his vehicle during a traffic stop. The DHHR further alleged that petitioner and the children were in the vehicle when law enforcement located the firearms and methamphetamine. According to the petition, petitioner and the father lacked stable housing and failed to provide the children with necessary food, clothing,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as T.C.-1 and T.C.-2, respectively, throughout the memorandum decision.

supervision, housing, or financial support. The DHHR alleged that petitioner's failure to provide for the children placed them at risk of harm. Finally, the DHHR alleged that the parents were not sufficiently motivated and organized to provide for the children's needs on an ongoing basis which constituted neglect. Petitioner waived her right to a contested preliminary hearing but did move the circuit court for services. The circuit court granted petitioner's motion and ordered the DHHR to provide petitioner with education and life skills classes, a psychological evaluation, bus passes for public transportation, housing assistance, random drug screenings, and supervised visitation with the children upon the successful completion of three clean drug screens.

In March of 2019, the circuit court held an adjudicatory hearing wherein petitioner failed to appear but was represented by counsel. At the hearing, a law enforcement officer testified that the home from which the children were removed was unsafe, and described an unstable porch and boards laying around outside the residence. The officer described the inside of the home as extremely cluttered and filthy. The officer also testified that the children were dirty and improperly dressed for the January weather. Next, a Child Protective Services ("CPS") worker also testified that the home was in poor condition, and described a washer and dryer covered in cat feces and at least fifteen to twenty cats roaming outside the residence. The DHHR also presented photographs, which the CPS worker confirmed she took of the home demonstrating strewn trash and extreme clutter. The CPS worker also testified that law enforcement officers found the children walking alone at 4:00 a.m. The CPS worker further testified that the children were starving and their clothes were filthy. The CPS worker also said that she had not heard from either parent since the petition was filed despite the fact that the DHHR offered them services. Specifically, the DHHR summary indicated that petitioner had received a drug screening packet but had not participated in random screenings or other services. The CPS worker testified that the parents were now homeless. Finally, the CPS worker testified that one of the children was taken to the hospital for a swollen stomach that was likely distended from hunger. Following the presentation of evidence, the circuit court found that the children were not cared for and the home in which they resided with petitioner and her husband was in deplorable condition. As a result, the circuit court adjudicated petitioner as an abusing and neglecting parent. After the hearing, petitioner's counsel moved to continue the scheduled dispositional hearing so petitioner could enroll in a drug treatment program. The circuit court granted that motion.

The circuit court held a status hearing in April of 2019 wherein the DHHR informed the court that petitioner had recently obtained her drug screening packet, after initially neglecting to do so. The DHHR informed the circuit court that petitioner participated in a multidisciplinary team ("MDT") meeting earlier that month where they discussed petitioner's lack of participation in drug screens, and warned her that it could seek termination of her parental rights if she did not participate in drug screens and services. By the time of the hearing, petitioner had participated in only one drug screen, which was positive for benzodiazepines. The next month, a service provider testified they could not contact or locate petitioner to provide her with services.

The circuit court held a hearing in July of 2019 wherein the DHHR reported that petitioner finally met with a service provider and began services. However, the DHHR informed the circuit court that petitioner failed to attend an MDT meeting the prior month where the DHHR discussed termination of petitioner's parental rights due to her lack of participation in the proceedings. Petitioner moved to continue the hearing on the ground that she had recently completed a two-

week drug detoxification program and was awaiting an opening to participate in a sober living facility. The circuit court granted petitioner's motion and granted her a post-adjudicatory improvement period. However, the DHHR warned petitioner that if she left the sober living facility, it would move the circuit court to terminate her parental rights.

In August of 2019, the DHHR filed an amended abuse and neglect petition against petitioner alleging that she had given birth to another child, W.C. III, and had received limited prenatal care. According to the amended petition, the child tested positive for controlled substances and suffered from neonatal abstinence syndrome. Petitioner waived a preliminary hearing on the amended petition and the circuit court continued her improvement period.

The circuit court held an adjudicatory hearing on the amended abuse and neglect petition in September of 2019 wherein the DHHR informed the circuit court that petitioner only had two prenatal visits with an obstetrician before the birth of W.C III., and that she tested positive for THC, methamphetamine, and morphine at the time of the birth. The DHHR further presented evidence that although petitioner tested negative for any drugs while admitted to the hospital for W.C. III's birth, W.C. III's cord blood tested positive for amphetamine, methamphetamine, buprenorphine, benzodiazepines, and THC. Petitioner stipulated to the allegations and informed the circuit court she was still enrolled in the sober living facility. The circuit court continued her improvement period.

In December of 2019, the circuit court held another review hearing wherein petitioner informed the court that she remained in the sober living facility and had recently obtained employment. However, the DHHR informed the circuit court that there were concerns about whether petitioner would maintain the position, as she had acquired and quit several prior jobs. The DHHR also informed the court that petitioner reportedly quit her college program.

The circuit court held a review hearing in May of 2020 regarding petitioner's improvement period wherein it was informed that petitioner had been discharged from the sober living facility after a positive drug screen in April of 2020. Petitioner informed the circuit court that she enrolled in a second program the same day she was discharged from the sober living facility. A DHHR worker informed the circuit court that petitioner had not returned multiple calls over a two-week period and that petitioner's recent behavior indicated she was unable to maintain sobriety. The circuit court terminated petitioner's improvement period based on her discharge from the first sober living facility. Additionally, the DHHR moved to terminate petitioner's parental rights based on its prior warning that if petitioner was discharged from the sober living facility, it would make such a motion.

The final dispositional hearing was held in July of 2020. Petitioner asked the circuit court for a post-dispositional improvement period while the DHHR moved for the termination of her parental rights. A CPS case manager testified that the children had been in the DHHR's custody for fifteen of the last twenty-two months. The case manager also testified that petitioner failed to make any substantial improvements during her improvement period and was discharged from the sober living facility due to her continued drug usage. Specifically, the case manager testified that petitioner was snorting caffeine pills, taking prescription medications without a valid prescription, and using methamphetamine. Upon cross-examination, the case manager did acknowledge that

petitioner had been participating in visits with the children while she was in the sober living facility and that those visits had gone well. The case manager also acknowledged that petitioner appeared to have enrolled in a new facility upon her discharge and reported working two jobs, but that petitioner failed to provide any documentation in support of these assertions. Petitioner testified that she was currently enrolled in a second sober living home after being discharged from the first sober living facility. Petitioner also testified that the first sober living facility forged her positive drug screen because she would not disclose other residents' drug usage. Finally, petitioner claimed that she passed all of her drug screens at both the first and second sober living facilities.

The circuit court concluded that petitioner failed to understand and acknowledge her issues. The circuit court further found that petitioner tested positive for controlled substances on several occasions and maintained an adversarial relationship with members of the treatment team. The circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the foreseeable future and that termination of her parental rights was in the best interest of the children. Petitioner appeals the September 29, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than granting her a less-restrictive alternative. Petitioner argues that she acknowledged her issues at various points in the proceedings, was granted a post-adjudicatory improvement period, and made substantial improvements. According to petitioner, she substantially complied with all services, including drug treatment for several months, with only one positive drug screen. Additionally, petitioner notes that she immediately enrolled in another treatment facility after being discharged from the first drug treatment program. As such, petitioner argues that the circuit court erred in terminating her parental rights. We disagree.

---

[2]The father's parental rights were terminated below. The permanency plan for the children is adoption in their current foster home.

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Further,

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014); *see also In re Frances J.A.S.*, 213 W. Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child."). Lastly, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

In this case, we find that the circuit court did not err in that petitioner failed to successfully complete her improvement period. Although petitioner made some initial progress by participating in adult life skills and parenting classes, having successful visits with the children, and participating for several months in a drug treatment program, she continued to test positive for controlled substances, deny her drug abuse despite positive drug screens, and gave birth to a drug-exposed child during the proceedings. Additionally, petitioner was discharged from the same drug treatment program she claims to have successfully participated in for several months. While petitioner asserts that she was unfairly discharged from the treatment program due to one positive screen, the CPS case manager testified at the dispositional hearing that petitioner snorted caffeine pills, took prescription medications without a valid prescription, and used methamphetamine while enrolled in the drug treatment program.

Further, contrary to her assertions, petitioner's improvement period and parental rights were not terminated as a result of a single failed drug screen at her sober living facility. Rather, the circuit court considered petitioner's multitude of failures to avail herself of services and opportunities to remedy the conditions of abuse and neglect. In March of 2019, petitioner failed to

pick up her drug screening packet, delaying her participation in drug screenings. Indeed, by April of 2019, petitioner had only participated in one drug screen, which was positive for benzodiazepines. Petitioner also failed to maintain contact with service providers and did not begin to participate in other services until July of 2019, six months after the abuse and neglect petition was filed. Further, petitioner gave birth to W.C. III in September of 2019, exposing him to amphetamine, methamphetamine, buprenorphine, benzodiazepines, and THC while she was pregnant with him. Petitioner also had difficulty maintaining stable employment. While petitioner argues she had two jobs at the time of the dispositional hearing and had provided consistently negative drug screens since May of 2020, she failed to consistently participate in drug screens throughout the proceedings, testing positive for several controlled substances on some screens while missing others altogether. Finally, petitioner failed to cooperate with service providers and the DHHR throughout the proceedings, missing MDT meetings and failing to maintain consistent contact with the DHHR. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights given her failure to remedy the conditions of abuse and neglect.

In sum, while petitioner made some changes in order to comply with the requirements of her improvement period, she did not modify her behavior or make sufficient improvement to justify the return of the children to the home. "We have recognized that it is possible for an individual to show compliance with specific aspects of the case plan while failing to improve . . . [the] overall attitude and approach to parenting." *In re B.H.*, 233 W. Va. at 65, 754 S.E.2d at 751 (additional quotations and citations omitted). Such is the case here. While petitioner completed some aspects of her improvement period and complied for some time with her drug treatment program, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Despite petitioner's participation in an improvement period and her completion of certain requirements, we find that sufficient evidence existed to support the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. Accordingly, for the reasons set forth above, we find no error in the circuit court's termination of petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6