**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M. and K.M.**

**No. 20-0821** (Ohio County 19-CJA-51 and 19-CJA-52)

## MEMORANDUM DECISION

Petitioner Father M.M., by counsel Richard W. Hollandsworth, appeals the Circuit Court of Ohio County's September 23, 2020, order terminating his parental rights to A.M. and K.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Joseph J. Moses, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition in March of 2019 alleging that petitioner was driving a vehicle with the mother and the children while he was under the influence of drugs.[2] The DHHR alleged that it received a referral that petitioner, the mother, and three children, two who are at issue in this appeal, were found in a car on the road outside of a local bar and both parents were slumped over and unresponsive. According to the petition, a witness reported observing petitioner driving erratically, eventually crossing the center line and coming to a stop in the road. The witness also reported to the police that both parents were found slumped forward in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]After the petition was filed, testing confirmed that petitioner was under the influence of fentanyl and marijuana.

1

the car. According to the petition, after the witness honked her horn to awaken petitioner and the mother, the mother exited the vehicle and began arguing with the witness while petitioner remained in the car, slumped over the steering wheel. Upon their arrival, police found petitioner unable to concentrate, falling asleep, and incapable of walking without leaning on the hood of the police cruiser. A law enforcement officer arrested petitioner for child endangerment and driving a vehicle while under the influence. Finally, the DHHR alleged that the mother and petitioner had a history of domestic violence and that petitioner is a registered sex offender, stemming from a 2001 conviction for third-degree sexual assault. According to the petition, law enforcement officers did not feel comfortable leaving the children in the mother's care at that time, and the children were placed with another family member under a temporary protection plan.

The circuit court held a preliminary hearing in April of 2019. A witness who observed petitioner's erratic driving that led to the parents' eventual arrests testified consistent to allegations in the petition. Next, a law enforcement officer testified consistent with the allegations in the petition, including that petitioner was so impaired he could not stand on his own. Finally, a Child Protective Services ("CPS") worker testified that the children reported to her that their parents were slumped over in the vehicle when they heard a horn honk before the mother exited the vehicle and began arguing with "some lady." After hearing the evidence, the circuit court found probable cause that the children were in imminent danger and that the DHHR should retain physical and legal custody of the children.

The next month, the circuit court held an adjudicatory hearing wherein petitioner stipulated to substance abuse issues and to driving with the children in the car in March of 2019 after smoking marijuana. However, petitioner denied knowing why he was incapacitated and stated he was waiting on blood test results. Petitioner also stipulated that he pled guilty to domestic violence against the mother in 2017. The circuit court accepted petitioner's stipulations, adjudicated him as an abusing and neglecting parent, and granted him a post-adjudicatory improvement period.

The circuit court held a status hearing in June of 2019, where the DHHR informed the court that the multidisciplinary team ("MDT") had discussed the terms of petitioner's improvement period and set them as follows: Petitioner was required to maintain sobriety; have no contact with those who abuse substances; have no contact with convicted felons; comply with recommendations from a psychological evaluation; maintain independent housing; obtain employment; and provide for the children's needs.

In August of 2019, the circuit court held a status hearing where the DHHR informed the court that petitioner had thirty drug screens positive for THC, nine negative screens, and four diluted screens. Petitioner claimed his positive screens stemmed from his use of CBD oil. Petitioner also lamented that his visitation with the children was discontinued by the DHHR. The circuit court ordered that petitioner's visits resume unless he is impaired at the time of the visits. The circuit court held another status hearing in October of 2019 wherein it was reported that both petitioner and the mother continued to test positive for drugs, including THC and hydrocodone. At this hearing, the DHHR reported that petitioner had accumulated fifty-eight positive screens while the mother had twenty-nine positive drug screens. Both parents claimed any positive results stemmed from their use of CBD oil, and the circuit court again directed they cease using the same.

However, the circuit court noted that it did not believe CBD oil was causing the parents' positive screens. The circuit court scheduled a dispositional hearing for November of 2019.

In November of 2019, the DHHR filed a case plan recommending termination of parental rights for both parents. According to the case plan, petitioner continued to test positive for various drugs, including THC, hydromorphone, hydrocodone, and oxycodone, but still denied having a substance abuse problem. However, the mother asked to participate in family treatment court. Later that month, petitioner was incarcerated after pleading guilty to two counts of felony child neglect stemming from his March of 2019 impaired driving incident.

The next month, the circuit court granted the mother's request to participate in family treatment court. In January of 2020, the circuit court held a status hearing where all parties agreed to postpone the scheduled dispositional hearing to accommodate the mother's participation in family treatment court. The circuit court agreed to wait until the parties contacted the circuit court to reschedule the dispositional hearing. The parties appeared for another status hearing in February of 2020 wherein it was reported that the mother was making progress in the family treatment court program.

However, in May of 2020, the circuit court entered an order dismissing the mother from the family treatment court program due to her failure to accept responsibility, her failure to understand how her drug usage affected reunification with her children, and her failure to communicate and collaborate with the family treatment court case coordinator and DHHR caseworker. Petitioner appealed her dismissal from the family treatment court program. In July of 2020, a specially assigned circuit court judge held a hearing regarding the mother's dismissal from the family treatment court program. Following the full evidentiary hearing, the acting circuit court judge found sufficient evidence to support her removal from the program as previously ordered.

The final dispositional hearing was held in September of 2020. Petitioner asked the circuit court for an additional improvement period or, in the alternative, the termination of his custodial rights only while the DHHR moved for the termination of his parental rights. Petitioner testified that he had been incarcerated since November of 2019 and had applied for accelerated parole. However, petitioner acknowledged that he was deemed ineligible because the parole board considers child neglect to be a violent offense. Petitioner testified that his parole hearing was set for November of 2020. Petitioner also testified that he was diagnosed with depression before his incarceration, received mental health services while incarcerated, and presented the circuit court with certificates of achievement. On cross-examination, petitioner acknowledged that he had been using marijuana for twenty years and that he used marijuana laced with fentanyl on the night of the March of 2019 car incident. Finally, petitioner acknowledged that the DHHR had offered substance abuse treatment but that he declined to participate in those services. Next, the DHHR caseworker testified that petitioner demonstrated noncompliance with services, denied his substance abuse issues, and failed to cooperate with service providers. The caseworker also testified that petitioner had been incarcerated for several months, which limited his ability to participate in his improvement period. However, the caseworker highlighted that petitioner failed to initiate substance abuse treatment for the first five months of his improvement period and prior to his incarceration. Further, the caseworker testified that petitioner tested positive for several

controlled substances, including various opiates and marijuana, during his improvement period. Based on this evidence, the DHHR recommended termination of petitioner's parental rights.

After hearing the evidence, the circuit court concluded that petitioner remained incarcerated since November of 2019 with no certain release date, tested positive for controlled substances on numerous occasions, and chose not to participate in substance abuse treatment services. As a result, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the foreseeable future and that termination of his parental rights was in the best interest of the children. Petitioner appeals the September 23, 2020, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than granting him a less-restrictive alternative. Petitioner alleges that he acknowledged his issues at various points in the proceedings and made substantial improvements in the matter. Petitioner also contends that the circuit court erroneously relied on his incarceration and the termination of the mother's parental rights as the main reasons for terminating his parental rights. Finally, petitioner argues that although his incarceration prevented him from participating in his improvement period, he was released just sixty days after the dispositional hearing and could have "easily completed an improvement period on his own or with services" from the DHHR. As such, petitioner argues it would have been in the best interests of the children to grant him a disposition pursuant to West Virginia Code § 49-4-604(c)(5).[4] We disagree and find no error in the circuit court's termination of petitioner's parental rights.

---

[3]The mother's parental rights were terminated below. The permanency plan for the children is adoption in their current foster home.

[4]West Virginia Code § 49-4-604(c)(5) provides that a circuit court may

4

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Further,

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014); *see also In re Frances J.A.S.*, 213 W. Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child."). Lastly, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

In this case, we find that the circuit court did not err in terminating petitioner's parental rights after finding that he failed to successfully complete his improvement period. Notably, petitioner does not dispute that he was free from incarceration during the first five months of his improvement period. Instead, petitioner argues that he indicated his intention to fully participate in a second improvement period and "he could have easily completed an improvement period on his own or with services from the DHHR" upon his release from incarceration. Petitioner also argues that the circuit court erroneously terminated his parental rights almost exclusively because of his incarceration. However, petitioner ignores his noncompliance with services from June of 2019 until his incarceration in November of 2019, where he routinely tested positive for various opiates and marijuana and refused to seek substance abuse treatment. While it may be true that

---

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

5

petitioner has previously acknowledged struggling with substance abuse, he has at other times flatly denied or minimized such abuse. The circuit court made several findings on these grounds in terminating his parental rights.

Petitioner also argues that he was on the cusp of release from incarceration and would have been able to start a second improvement period within weeks of the dispositional hearing. However, at the time of the dispositional hearing, petitioner was still incarcerated with an uncertain release date. Thus, to the extent petitioner argues that the circuit court should have granted him an improvement period or continued disposition until he was released from incarceration and available to participate in services, we note that Rule 5 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[u]nder no circumstances shall a child abuse and neglect proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings."

More importantly, the circuit court considered petitioner's lack of progress in his improvement period prior to incarceration, where he continued to test positive for controlled substances. Petitioner also minimized his continued marijuana usage during the proceedings, despite being under the influence at the time of his March of 2019 vehicle incident, which endangered the children. At the time of the dispositional hearing, petitioner was incarcerated, had no imminent release date, and failed to abide by the terms and conditions of his improvement period prior to incarceration. As for petitioner's argument that the circuit court erred by considering the termination of the mother's parental rights when terminating his parental rights, he provides no evidence in support.

Additionally, petitioner argues that he was misdiagnosed for an underlying mental health issue and a proper diagnosis and treatment would have increased his compliance with services and chances for success in the proceedings. Petitioner contends he was only incarcerated once and has been properly diagnosed for depression and prescribed medication. He cites his frequent marijuana usage as an attempt at self-medication. However, petitioner testified at the dispositional hearing that he was prescribed medication prior to his incarceration through service providers and the DHHR.

Finally, petitioner takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect. However, petitioner was granted an improvement period and provided five months of services. Over the course of these five months, petitioner consistently failed drug screens, minimized or denied his substance issue, and failed to receive treatment. As such, petitioner was provided ample time and he failed to demonstrate that he could correct these conditions. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive

6

alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton