584 S.E.2d 492

**IN RE FRANCES J.A.S., Daryl Jean S., Crystal Nicole S., and David Allen R., Jr.**

Nos. 30909, 30910.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2003.

Decided June 18, 2003.

---

5. The insured in this case sought underinsured coverage.

William L. Pennington, Morgantown, for Appellant, Darrell S.

Melinda Russell, Guardian ad Litem, Morgantown, for Appellees, Frances J.A.S., Daryl Jean S., Crystal Nicole S., and David Allen R., Jr.

Gail Voorhees, Public Defender Corporation, Kingwood, for Appellee, Melissa S.R.

Thorn H. Thorn, Morgantown, for Appellee, David A. R., Jr.

Darrell V. McGraw, Jr., Attorney General, Charleston, C. Carter Williams, Assistant Attorney General, Petersburg, for the Appellee, West Virginia Department of Health & Human Services.

PER CURIAM.

This is an appeal by Darrell S., biological father of Frances S. and Daryl Jean S., from a July 26, 2002, order of the Circuit Court of Preston County placing Frances and Daryl Jean in the custody of their mother and step-father, Melissa S.R. and David R., during a dispositional improvement period.[1] Melinda Russell, guardian ad litem for Frances and Daryl Jean, is also an Appellant in this action, maintaining that Frances and Daryl Jean should not have been returned to their mother's custody during the dispositional improvement period. Upon thorough review of this matter, we reverse and remand for further proceedings consistent with this opinion.

I. Facts and Procedural History

Subsequent to a divorce between the Appellant Darrell S. and Melissa S., Melissa S. was granted custody of the parties' two daughters, Frances and Daryl Jean.[2] On January 1, 1998, Melissa S. gave birth to Crystal S. whose putative father is not a party to this matter. On September 29, 1999, Melissa S.R. gave birth to David R., Jr., whose father is David R., a party to this action.[3] The Appellant, a resident of Colorado, maintained contact with his two daughters, Frances and Daryl Jean, while they resided with their mother and step-father in Preston County, West Virginia.

On January 17, 2001, the Department of Health and Human Resources (hereinafter "DHHR") filed a child abuse and neglect petition against Melissa S.R. and David R. based upon allegations of domestic violence and alcohol abuse which affected their parenting abilities.[4] In addition to the allegations contained in the petition, further investigation revealed that David R. had pled no contest in 1991 to the charge of sexual abuse of his biological fifteen-year-old daughter, not a party to this action.[5] Information gathered

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See Phillip Leon M. v. Greenbrier County Bd. of Educ.,* 199 W.Va. 400, 484 S.E.2d 909 (1996); *In re: Katie S. and David S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

2. Frances was born March 16, 1989, and is currently fourteen years of age. Daryl Jean was born July 10, 1990, and is currently twelve years of age.

3. Melinda Russell also serves as guardian ad litem for Crystal S. and David R., Jr., but she does not assign error to their placement with Melissa and David R. She does, however, assert that her petition for appeal "is also on behalf of all four child respondents in the instant case, regarding the circuit court's improperly giving weight to a psychological test purporting to differentiate between child molesters and non-child molesters."

4. The petition was premised upon several instances of alleged domestic violence and child

neglect, including a referral in November 1999 regarding several police calls to the Melissa S.R. and David R. residence due to instances of domestic violence; a February 2000 referral revealing that the children, including four-month-old David, Jr., had been left at home with the ten-year-old Frances while the parents went out drinking; and a May 2000 incident of domestic violence between David and Melissa in which Melissa had suffered bruises and abrasions on her neck. During that incident, David R. had been armed and had secluded himself in a nearby wooded area. Police helicopters searched the wooded area, and the children fled the house by climbing out a window. The DHHR offered services to the family but encountered lack of cooperation by David and Melissa R. Wellsprings Family Services terminated its assistance to the home due to non-compliance.

5. Melissa and David R. contend that David R.'s daughter had fabricated the allegations of abuse after she had been placed in the custody of her father pursuant to a juvenile delinquency pro-

during investigation of this petition in West Virginia also revealed that Melissa S.R. had relinquished her parental rights to her first three children in Ohio after she had left those children in the care of her mother and they had been sexually abused by relatives.

Subsequent to a stipulated adjudication in this matter, all four children of Melissa S.R. were placed in foster homes, and Melissa and David R. were granted a six-month post-adjudicatory improvement period. During that post-adjudicatory improvement period, Frances and Daryl Jean were placed in the temporary physical custody of their father, Appellant Darrell S., in Colorado.[6] The girls were transported to Colorado on July 12, 2001. A Colorado child protective services evaluation found that the home of Darrell S. and his wife, Ivy S., was an alcohol-free, safe environment for Frances and Daryl Jean.

During a multi-disciplinary team meeting in August 2001, marital difficulties between David and Melissa R. were revealed, and Melissa thereafter lived in a local Rape and Domestic Violence Shelter from August 22, 2001, to October 3, 2001. In October 2001, the DHHR requested that the lower court find that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and recommended that the parental rights of Melissa and David R. be terminated with respect to all four children.[7]

At the conclusion of the post-adjudicatory improvement period, the lower court conducted a dispositional hearing over the course of seventeen days from November 13, 2001, to April 18, 2002. The lower court essentially conducted this extended hearing for the dual purpose of determining the extent to which Melissa and David R. had complied with the requirements of the post-adjudicatory improvement period and deciding the permanent placements for the four children during the dispositional improvement period. Counsel for Appellant Darrell S. was present at the hearings, but was not permitted to participate.[8]

The lower court received evidence from DHHR caseworker Jack Wood. Mr. Wood testified that Melissa and David R. had complied with every aspect of their improvement period and had shown significant progress. However, Mr. Wood further explained that the DHHR's recommendation of termination of parental rights had been based upon Dr. Hewitt's psychological assessments conducted in March 2001, before the improvement period began. Dr. Thomas Adamski, a forensic psychiatrist, disagreed with Dr. Hewitt's assessment and concluded that the current behavior of Melissa R. contradicted Dr. Hewitt's conclusions that she was incapable of improvement. Richard Chamberlain, a marriage counselor, testified that Melissa and David R. had participated fully in his counseling program and were genuine in their desire to improve their relationship and parenting skills. Representatives from Burlington United Methodist Family Services also testified that Melissa and David R. were appropriate in their visitation with the children in foster care.

Based upon evidence of improvement by David and Melissa R., the guardian ad litem recommended that Crystal and David, Jr., be returned to Melissa and David R. The guard-

ceeding. Her infant son lived with her mother, and David R. believes that she formulated the sexual abuse story to allow her to return to her mother's home. David R. contends that he pled no contest to the charge to prevent his daughter from being involved in a trial. The daughter later recanted the sexual abuse allegations.

6. Although Darrell S. previously experienced alcohol-related difficulties, including several DUI convictions and two years in jail, the evidence revealed that he has maintained sobriety since 1993.

7. This position by the DHHR was based upon the results of psychological evaluations of David and

Melissa R. conducted by Dr. Charles William Hewitt and distributed to counsel on September 12, 2001. Dr. Hewitt opined that Melissa and David R. both suffered from severe personality disorders and were unfit parents incapable of participating in any rehabilitative services.

8. While counsel for Appellant Darrell S. was present at the hearings, he was excluded from participation and appeared only as an observer. On two occasions, the lower court informed counsel for Darrell S. that he was excluded from the hearings and that he was only present by the consent of the other parties. The lower court specifically informed counsel for Darrell S. that placement of the children was not at issue.

ian ad litem also recommended that Frances and Daryl Jean remain in their father's care in Colorado during the dispositional improvement period.

On May 6, 2002, the lower court issued an opinion letter containing its findings of fact and conclusions of law. The letter included no explicit findings regarding the best interests of the children. In accordance with the opinion letter, the lower court entered an order dated May 15, 2002, granting a six-month dispositional improvement period to Melissa and David R., pursuant to West Virginia Code § 49–6–12(c). Once again, the order failed to include explicit findings regarding the best interests of the children. The lower court noted that Melissa and David R. were receiving sexual offender education and that they appeared motivated to remain sober and free of domestic violence. By the time of the entry of the Mary 15, 2002, order, Frances and Daryl Jean had been living in their father's care in Colorado for an entire school year.

On May 17, 2002, Appellant Darrell S. filed a motion for stay of execution, objecting to the placement of his daughters with their mother and step-father. On May 20, 2002, guardian ad litem Melinda Russell filed a motion for a stay of execution, also objecting to the lower court's placement of Frances and Daryl Jean with Melissa and David. R. during the dispositional improvement period. On May 21, 2002, the DHHR filed a motion for stay of execution, arguing that the four children should not be placed with Melissa and David R.[9]

In response to the motions for stay, the lower court issued a May 28, 2002, order articulating its acknowledgment that the best interests of Frances and Daryl Jean should be considered in formulating the dispositional improvement period. Thus, the lower court conducted placement reconsideration hearings on June 25, 2002; July 3, 2002; and July 18, 2002. Appellant Darrell S. traveled from Colorado to participate in the hearings. Daryl Jean specifically testified that she wished to remain with her father in Colorado. Frances also testified, but did not wish to express a preference.[10] Through telephone conferencing, the lower court heard the testimony of Valerie White of Boulder County Social Services in Colorado. Ms. White had conducted a home study of the residence of Darrell S. and his wife and had continued to monitor the girls while they lived in Colorado. Ms. White testified that the girls were well-adjusted with their father in Colorado and should remain there. The lower court also heard the testimony of Ms. Dianne Eraker, a counselor for the girls in Colorado. She recommended that the girls remain in Colorado with their father, recognizing the need for stability during this critical stage of adolescence. DHHR caseworker Jack Wood testified that the best interests of the girls would be served by allowing them to remain with their father during their mother's dispositional improvement period. David Walker, a parenting trainer, testified that he wanted to observe the interaction between the girls and Melissa and David R. during his parenting classes.

By order dated July 26, 2002, the lower court found that Frances and Daryl Jean[11] should be returned to the custody of Melissa and David R. during the dispositional improvement period. The court found that

---

9. The DHHR subsequently withdrew its request for a stay of the proceedings and indicated its intent not to contest the lower court's order returning the children to Melissa and David R. The DHHR informed this Court, via letter, that it had chosen not to petition for appeal in this matter. The DHHR specified that it does not oppose the relief sought by Darrell S. and the guardian ad litem regarding the placement of Frances and Daryl Jean in the custody of Darrell S. Thus, despite original challenges to the lower court's determination of placement of Crystal and David, Jr., with their mother, the placement of those children is not presented or briefed as an appellate issue before this Court. Therefore,

we do not address the placement of the younger children.

10. The July 26, 2002, order recited Frances' testimony, explaining that Frances "was reluctant to express her wishes with respect to where she would prefer to reside, stating instead that she would prefer to 'just leave it up to dad.' "

11. Crystal and David Jr. were also returned to the custody of Melissa and David R. during the dispositional improvement period. The July 26, 2002, order specifies that there was no opposition to the return of custody of these two children to Melissa and David R.

"[n]either the Petitioner [DHHR], the Guardian Ad Litem, nor Mr. [S.] offered sufficient evidence compelling enough to justify this Court changing its previous order returning the children to Melissa [R.]." The court did not include explicit findings regarding the best interests of the children and specifically stated that a successful completion of the dispositional improvement period would be required "before making any final decisions regarding placement of the children."

On August 13 and 16, 2002, petitions for appeal to this Court were filed by Darrell S. and guardian ad litem Melinda Russell. Frances and Daryl Jean were returned to West Virginia and have remained in the custody of Melissa and David R. since October 25, 2002. The dispositional improvement period concluded on December 5, 2002, and the lower court granted an additional three-month extension, ending on March 5, 2003.

▮ In this appeal, guardian ad litem Melinda Russell assigns the following errors: (1) abuse of discretion in disrupting the stable lives of Frances and Daryl Jean to return them to the custody of Melissa and David R.; (2) abuse of discretion by rigidly imposing the same disposition on two different sets of half-siblings where different permanency plans were available; and (3) error in giving weight to a sexual offender evaluation of David R. which did not meet the *Daubert*[12] test for scientific evidence.

▮ Appellant Darrell S. assigns the following assignments of error: (1) error in

excluding him from participation[13] in the original hearings; (2) abuse of discretion in failing to consider issues of child custody when deciding residential placement during the dispositional improvement period; (3) error in failing to find that placement of Frances and Daryl Jean with their father was in their best interests.

## II. Standard of Review

▮ This Court has consistently articulated that the two-pronged standard of review set forth in syllabus point one of *McCormick v. Allstate Insurance Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996) should be employed in child abuse and neglect cases. That syllabus point provides as follows:

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

*See also In re Brandon Lee B.*, 211 W.Va. 587, 567 S.E.2d 597 (2001), cert. denied, 536 U.S. 942, 122 S.Ct. 2627, 153 L.Ed.2d 808 (2002); *In re Beth Ann B.*, 204 W.Va. 424, 513 S.E.2d 472 (1998); *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). The following guidance is also provided in syllabus point one of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996):

12. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This assignment of error is premised upon a conclusion reached by licensed psychologist Terry Laurita regarding the issue of whether David R. might engage in child sexual abuse. Ms. Laurita had subjected David R. to a sexual offender evaluation and had concluded that he posed a low risk of sexually offending any child in his care. The evaluation techniques utilized by Ms. Laurita became the subject of debate in this case based upon the Appellant's contention that evidence revealed through such evaluative tool should have been excluded from testimony due to the contention that it did not meet the *Daubert* test for scientific reliability. The Abel Assessment for Sexual Interest is purported to be an objective test designed to differentiate between child molesters and non-molesters. Our review of Ms. Laurita's conclusions reveals that her assessment of David R. was

premised upon several evaluative techniques and was not based exclusively upon the results of any particular questioning tool. We find no error in the presentation of Ms. Laurita's opinion testimony to the lower court.

13. While Darrell S. was not permitted to participate in the original hearings regarding the results of the improvement period granted to Melissa and David R., it is the opinion of this Court that the lower court remedied any resulting prejudice by permitting Darrell S. to participate fully in the reconsideration hearings. Darrell S. testified and presented the testimony of a Colorado social services worker and a counselor. He was also permitted to introduce evidence regarding the children's academic accomplishments, their activities, pictures of his home, and his monetary income.

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

In the review requested in the case sub judice, it is the lower court's ultimate determination of the custody of Frances and Daryl Jean during the dispositional improvement period that has been challenged. We consequently review that determination under an abuse of discretion standard.

### III. Discussion

▮▮▮ This Court has historically emphasized that "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948); *see also Holstein v. Holstein* 152 W.Va. 119, 160 S.E.2d 177 (1968). In *Bowens v. Maynard*, 174 W.Va. 184, 324 S.E.2d 145 (1984), this Court stated that "[c]hild neglect and abuse procedures that include the custodian of the children in all the proceedings are calculated to achieve a valuable social goal. Their motivating factor is the often stated standard of the 'best interests of

the child.'" 174 W.Va. at 186, 324 S.E.2d at 147. This Court has not deviated from that principle, and it has become the ultimate benchmark by which all custody decisions are appraised. While this Court has also observed that the rights of the parents are entitled to respect and protection, the rights of the children are paramount, as accentuated in syllabus point three of *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996): "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." [14]

Rule 38 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, regarding hearings subsequent to improvement periods and final disposition, also recognizes the importance of the best interests of the child in this context, providing in pertinent part as follows:

> No later than sixty (60) days after the end of the alternative disposition improvement period, the court shall hold a hearing to determine the final disposition of the case, including whether the conditions of abuse and/or neglect have been adequately improved in accordance with W.Va.Code § 49–6–5(c). The court also shall determine the necessary disposition consistent with the best interests of the child. . . .

Particularly crucial to this Court's evaluation of this custody issue is the testimony of one of the children, twelve-year-old Daryl Jean. During her testimony, she explicitly stated that she preferred to remain living with her father in Colorado. As this Court has repeatedly recognized, children over the age of fourteen are capable of deciding custody issues for themselves, and the opinions of children approaching that age must also be earnestly considered. As this Court explained in *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989).

---

14. The polar star guidance is particularly applicable in the abuse and neglect context, as we recognized in syllabus point eight of *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973):

> Once a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties

as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody. Even then, the legal rights of the parents, being founded in nature and wisdom, will be respected unless they have been transferred or abandoned.

In the child custody context, children fall into one of three groups, depending on their age. Children under six years of age are called "children of tender years": They are the most dependent on their parents, but they usually cannot articulate an intelligent opinion about their custody. Children between six and fourteen are also dependent on their parents, but they can usually articulate a preference regarding custody arrangements and explain their reasons. By the age of fourteen a child takes on many of the qualities of an adult; in most cases, unless geography interferes, a child over fourteen will decide for himself or herself the parent with whom he or she wants to live, regardless of what a court says.

182 W.Va. at 64, 385 S.E.2d at 919–20 (footnotes omitted). This Court's observations regarding a child's contribution to the custody determination are based upon concepts contained in West Virginia Code § 44–10–4 (1923) (Repl.Vol.1997), regarding the right of a minor to nominate his or her guardian.

If the minor is above the age of fourteen years, he may in the presence of the county court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, nominate his own guardian, who, if approved by the court, shall be appointed accordingly; and if the guardian nominated by such minor shall not be appointed by the court, or if the minor shall reside without the State, or if, after being summoned, he shall neglect to nominate a suitable person, the court may appoint the guardian in the same manner as if the minor were under the age of fourteen years.

In *Rose v. Rose*, 176 W.Va. 18, 340 S.E.2d 176 (1985), this Court discussed the issue of consulting children regarding custody selections and explained that the child's preference is not "binding on the trial court" and the parties may "introduce evidence to rebut the child's testimony." *Id.* at 179 n. 3, 340 S.E.2d at 178 n. 3. The *Rose* Court also emphasized as follows:

[A]n inquiry should be made into the child's intelligence and maturity to see if the child's choice was intelligently made.

Equally important, however, is the child's rationale for his decision. In order to be accorded weight, a child's preference for one parent over the other ought to be based on good reason.

*Id.* at 21 n. 4, 340 S.E.2d at 179 n. 4. The *Rose* Court stated that "[i]n making its examination of the child, the trial court should try to explore several aspects of the child's decision." *Id.* at 21 n. 4, 340 S.E.2d at 179 n. 4. Guidelines were offered regarding the lower court's determination, as follows:

1. The trial court should give greater weight to the wishes of a child which are expressed with strength, clearness, or with great sincerity....

2. A child's preference should be given less weight where it appears that the preference is based on a desire for less rigid discipline or restraint....

3. The trial court should investigate whether the statement of preference by the child was induced by the party in whose favor the preference was expressed. If so, said statement of preference should be accorded little, if any, weight....

4. Where an otherwise intelligent child makes an illogical decision based on unimportant factors, the trial court may disregard the child's statement of preference....

*Id.* at 21 n. 4, 340 S.E.2d at 179 n. 4.

In *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 447 (1990), this Court observed that the child in question was over the age of fourteen years and recognized that "the legislature of this state has granted her the right to nominate her own guardian." *Id.* at 120, 405 S.E.2d at 450. The Court explained: "While W.Va.Code § 44–10–4 (1982) applies to circumstances where a guardian is to be appointed in lieu of a natural parent, we have previously found the statute to be 'evidence of the legislature's conclusion concerning the age at which an adolescent should be given some substantial say in his own affairs.' *S.H. v. R.L.H.*, 169 W.Va. 550, 555, 289 S.E.2d 186, 189 (1982)." *Id.*

Analyses of the best interests of a child and assessments of the child's own preferences for placement are necessarily fraught

with uncertainties and speculation regarding the most appropriate custody resolution. This Court has repeatedly encountered child custody battles in which neither parent presents a commendable record of stellar parenting skills. Alcohol abuse, prior criminal convictions, and allegations of prior sexual misconduct are unfortunate realities in these conflicts we seek to resolve. Courts are often faced with the difficult task of choosing between the lesser of two evils and placing the child in the environment which appears to present the fewest risks. As Justice Starcher observed in his concurrence to in *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000),

> While we may not be able to provide every child with the perfect, white bread, cookie-cutter childhood replete with sitcom-like suburban experiences, the court system must fashion a solution that provides protection for children, with a reasonable opportunity to reach adulthood safely and in as good physical and mental health as practicable.

208 W.Va. at 345, 540 S.E.2d at 562 (Starcher, J., concurring).

▮ Given the circumstances with which the lower court was presented in the present case, we conclude that the lower court abused its discretion by ordering the transfer of custody of Frances and Daryl Jean from Darrell S. to Melissa and David R. during the dispositional improvement period. The lower court was presented with the direct testimony of Daryl Jean that she preferred to live with her father in Colorado. Further, the Colorado home study report indicated that the living environment was appropriate, and the therapist who had counseled Frances and Daryl Jean in Colorado testified that it would be within Frances and Daryl Jean's best interests to remain with their father. Due to the passage of time, however, placement during the dispositional improvement period is no longer an issue. That improvement period has concluded, and the lower court must now determine the permanent placement of the children.[15]

▮ This Court has explained that "[t]o justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syl. Pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977). While we understand the lower court's reluctance to remove Frances and Daryl Jean from the custody of their mother, the best interests of the children must be fully evaluated and Daryl Jean's stated preference must be recognized. In order to facilitate a thorough evaluation of those issues, the lower court should conduct a hearing upon remand which specifically addresses the preferences of Frances and Daryl Jean and fully explores issues surrounding their best interests. The lower court should provide the biological father and the biological mother with meaningful opportunity to be heard, including the right to testify and to present and cross-examine witnesses. In all custody matters, "we have traditionally held paramount the best interests of the child." Syl. Pt. 5, in part, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

---

**15.** In *Israel by Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989), this Court examined the circumstances under which technically moot issues would still require the attention of this Court. Syllabus point one provides as follows:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

In the present case, the lower court's determinations regarding custody during the dispositional improvement period reflected inadequate consideration of the best interests of Frances and Daryl Jean and the explicit testimony of Daryl Jean regarding her preference for custody. These precise issues will have to be developed and evaluated during the lower court's determination of the permanent custody issues; we consequently find that "sufficient collateral consequences will result" from this Court's determinations in this case "so as to justify relief." *Israel*, 182 W.Va. at 455, 388 S.E.2d at 481, syl. pt. 1.

"Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." *In re Brian D.*, 194 W.Va. 623, 636, 461 S.E.2d 129, 142 (1995). The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child. In the present case, the lives of Frances and Daryl Jean have been severely uprooted during the legal processes of this abuse and neglect proceeding. Despite the efforts of the Melissa and David R. to rectify their deficiencies, simple reunification may not be in the best interests of Frances and Daryl Jean, and the lower court's evaluation on remand must fully address those best interests in determining a disposition which most effectively serves the children.

Reversed and Remanded with Directions.