**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.R., Z.R., A.S.-B., and P.B.**

**No. 21-0562** (Wood County 19-JA-142, 19-JA-143, 19-JA-144, and 19-JA-191)

**MEMORANDUM DECISION**

Petitioner Father Z.B., by counsel Michele Rusen, appeals the Circuit Court of Wood County's June 16, 2021, order terminating his parental rights to D.R, Z.R., A.S.-B., and P.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Matthew E. DeVore, filed a response on behalf of the children also in support of the circuit court's order. Intervenor foster parents C.S. and H.S., by counsel Jeffrey B. Reed, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than imposing a less-restrictive dispositional alternative.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The circuit court proceeding concerned an additional child, L.T. Despite naming the child in an amended petition, the DHHR included no allegations of abuse or neglect against the petitioner with respect to L.T. As a result, L.T. was not adjudicated as an abused or neglected child, and petitioner's parental rights to the child remain intact, though petitioner has no visitation rights with the child as a result of prior court proceedings. L.T. is in the sole custody of his nonabusing mother. Because the court took no action in regard to L.T., that child is not at issue in this appeal.

1

In July of 2019, the DHHR filed a child abuse and neglect petition alleging petitioner physically abused then seven-year-old D.R. and that this physical abuse also threatened the wellbeing of Z.R. and A.S.-B. The DHHR alleged that D.R. was taken to an emergency room where he presented with injuries consistent with child abuse. According to the petition, the DHHR conducted a forensic interview with D.R. through a local Child Advocacy Center. During the interview, D.R. stated that petitioner spanked him with a board on the buttocks and smacked him in the face after accusing him of taking money from his wallet. The child further disclosed that petitioner would pick him up around his belly and hold him against the wall when he was angry with him. D.R. told the interviewer that he was afraid of petitioner and hated going to his residence for visitation.[3] D.R.'s mother and maternal grandfather told Child Protective Services ("CPS") workers that they discovered injuries to D.R. upon his return from visiting with petitioner, prompting them to take the child for medical care. According to the petition, staff took photographs of the child's injuries, depicting a large bruise on his buttocks, multiple welts on the back of his right leg, and bruising on his temple that ran from his eyebrow to his left ear. D.R. also complained of pain near his left ear, which he attributed from being hit by petitioner. Upon subsequent examination by his pediatrician, D.R. was diagnosed with a ruptured ear drum. The DHHR further alleged that law enforcement officers interviewed petitioner regarding D.R.'s injuries. According to the petition, petitioner explained that "I don't usually beat my kids but he stole $350.00 from me. That's my rent money so I disciplined him." Petitioner admitted that he hit the child hard enough that his buttocks immediately welted and bruised. However, when officers questioned petitioner about hitting D.R. in the face and ear, petitioner did not admit to causing the child's injuries and stated that the child did that to himself. After speaking with petitioner, the officers executed a search warrant on petitioner's residence and retrieved the belt and board that were used to injure D.R. Ultimately, petitioner was charged with felony child abuse as a result of the law enforcement investigation.

The DHHR filed an amended petition in September of 2019 adding allegations that the mother of A.S.-B. exposed the children to unsafe and unsanitary living conditions and drug abuse and allowed them to have contact with petitioner in violation of her safety plan. The next month, the DHHR filed a second amended petition after the birth of P.B. The DHHR alleged that the mother used controlled substances while pregnant with P.B. and that petitioner failed to protect the child from the mother's drug abuse.

The circuit court held an adjudicatory hearing in October of 2019 during which petitioner stipulated to "inappropriate and excessive discipline" of D.R. Petitioner further stipulated that he abused and neglected P.B. as a similarly situated child at a subsequent proceeding in November of 2019. As a result of his stipulation, the circuit court adjudicated petitioner as an abusive and neglectful parent as to D.R., Z.R., and A.S.-B. Petitioner was then granted a six-month post-adjudicatory improvement period. The next month, petitioner stipulated to abusing and neglecting P.B. based on allegations in the second amended petition.

---

[3]At the time of the incident, D.R. and Z.R. were in their mother's primary custody pursuant to a prior unrelated family court proceeding. Petitioner's physical abuse of D.R. occurred during petitioner's regular weekend visitation with the child.

The circuit court held a series of review hearings over the subsequent months. At a review hearing in May of 2020, the DHHR demonstrated that although petitioner was participating in services, he had established a pattern of dishonesty and failed to acknowledge many of his issues with service providers and the DHHR. The DHHR further presented petitioner's parental fitness evaluation report wherein the evaluator detailed that no services would be effective in correcting petitioner's issues of abuse. As a result of petitioner's lack of progress, the DHHR requested that the circuit court schedule the proceedings for a dispositional hearing.

The circuit court held a hearing in July of 2020 during which it granted petitioner a six-month post-dispositional improvement period. During the hearing, petitioner testified that although he did not acknowledge his abuse and neglect during his parental fitness evaluation, he subsequently learned that his actions were abusive through his continued participation in services. Despite his limited progress during his post-adjudicatory improvement period, the court found that petitioner had experienced a "substantial change in circumstance through classes, screens, and [his] testimony."

After some periods of compliance during his post-dispositional improvement period, a Court Appointed Special Advocate ("CASA") filed a report indicating that "[d]espite compliance with some of the terms and conditions of their respective improvement periods, . . . CASA has concerns that both [r]espondent [p]arents are essentially going through the motions with their respective improvement periods."  The DHHR also filed a report in December of 2020 after visiting petitioner's home. The DHHR expressed concerns about the cleanliness and safety of the home, including the use of multiple portable electric heaters, and presented photographs of the conditions inside.

The circuit court addressed the reports at a hearing in January of 2021 during which the court noted its concerns with petitioner's "honesty and decision making." At the hearing, a CPS worker testified as to the parents' improvement periods. The worker explained that the parents lied about the food they were feeding the children; lied about selling a kitchen table inside the home that reflected their inability to properly manage money; and lied about purchasing and keeping multiple animals, including two dogs, two birds, a cat, and a ferret inside the residence. The worker indicated that the animals further contributed to the home being cluttered, odoriferous, and unsanitary for the children. Despite these concerns, the court extended petitioner's post-dispositional improvement period for an additional three months.

The circuit court held another review hearing in March of 2021 during which the DHHR presented evidence concerning a domestic violence incident that occurred in the prior month. A CPS worker testified that petitioner tracked the mother of A.S.-B. and P.B.'s location to the home of a suspected paramour, banged on the door, and yelled until the mother exited the paramour's residence. The worker further testified that petitioner removed the mother's license plate from her vehicle, tried to force her off of the highway while driving, and followed her to a gas station and insisted that she return to their home with him. The mother contacted the CPS worker during the incident and remained on the phone with her throughout, while expressing fear of petitioner.

The CPS worker further testified that the mother admitted that she had done petitioner's parenting skills homework assignments for him, and the worker witnessed issues with petitioner's

parenting of the children during her visits. The worker testified that during one home visit, petitioner became extremely angry and both parents continued to be deceitful and dishonest when addressing concerns raised by service providers or the DHHR. At the conclusion of the hearing, the circuit court acknowledged the issues of compliance with the terms of the parents' improvement period and noted that the improvement periods were set to expire in forty-five days. As a result, the court scheduled the proceedings for a dispositional hearing in April of 2021 and ordered that services continue until the hearing.

The circuit court held a series of final dispositional hearings in May and June of 2021. During those hearings, a CPS worker testified that despite the parents' participation in services, they failed to demonstrate changes in their parenting and overall ability to provide a safe home for the children. The worker documented repeated incidents of the parents lying about everything from their employment to the children's meals. Service providers, including the parenting provider, visitation supervisor, and counselors, further testified about different instances of the parents lying during the proceedings. The CASA worker also produced a report explaining the deceit he had experienced in working with the parents. The worker provided text messages which demonstrated that the mother was deceitful about allowing family members to join in a visit with the children. A marriage counselor also testified that she provided counseling to the couple at their request. The counselor explained that petitioner and the mother failed to fully disclose the domestic violence issues in their relationship and, as a result, she was unable to fully address those issues in her counseling with the couple.

Next, the mother testified that she was employed but under questioning acknowledged that she had lied to a CPS worker about her prior unemployment. Under further questioning, the mother acknowledged that she had been warned against bringing more animals into the home while attempting to financially provide for the children. However, the mother confirmed that she had brought more animals into the home since prior hearings where the court warned against such behavior. The mother further testified about the incident of domestic violence in February of 2021, where petitioner tracked her to another residence and demanded she return home with him. The mother explained that she was worried that petitioner would try to physically harm her during the incident. The mother further explained that petitioner followed her in his vehicle to a gas station. Once at the gas station, the mother explained that petitioner removed the keys from her vehicle ignition and drove away before coming back. The mother explained that once petitioner returned, he demanded that she follow him home. Under questioning, the mother also noted that petitioner threatened to report her vehicle to law enforcement officials after he had removed the license plate from her vehicle.

After hearing the evidence, the circuit court found that the parents failed to successfully complete their improvement periods. The court found that while the parents may have been "attending and giving the appearance of being compliant with services," they "failed to internalize what those services intended to achieve." The court further found that the measure of a successful improvement period is not merely attending appointments and classes but "whether the parent has changed his/her behavior to make them an appropriate parent to have the children safely returned to the parent." The court noted that the proceedings began as a result of domestic violence against the children and progressed to domestic violence between the parents, which the court found as evidence of petitioner's progression of violence during the course of the case. Finally, the court

found that petitioner and the mother "have no credibility whatsoever" and failed to be honest with each other, service providers, and the court. The court concluded that the parents' "failure to be honest with their service providers made those services futile." Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse or neglect in the foreseeable future and that termination of his parental rights was in the best interest of the children. Petitioner appeals the June 16, 2021, dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, in all of petitioner's assignments of error, he argues that the circuit court erred in terminating his parental rights rather than granting him a less-restrictive alternative. Petitioner argues that he acknowledged his issues at various points in the proceedings, was granted a post-adjudicatory and post-dispositional improvement period, and made substantial improvements. According to petitioner, he substantially complied with all services, including parenting and adult life skills classes; therapy, including voluntary enrollment in marriage counseling; an anger management program; drug screening; and regular attendance at visitations and hearings. Petitioner also asserts that his home was suitable and clean for the children, and that he provided for them while maintaining financial responsibility. Petitioner contends that his "many, many accomplishments" were overshadowed by a "single argument between he and his wife when she was caught in the act of being unfaithful to him." Petitioner notes that the children were not present during the incident and asserts that no physical violence occurred and no threats of violence were made. Petitioner also argues that it was unfair for the circuit court to find that a lack of honesty during the proceedings was a basis in the termination of his parental rights. As such, petitioner argues that the circuit court erred in terminating his parental rights. We disagree.

This Court has held that

---

[4]The mother of D.R. and Z.R. is a nonabusing parent and the children have achieved permanency in her care. A.S.-B.'s and P.B.'s mother's parental rights were terminated below. The permanency plan for the children is adoption in their respective foster homes.

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Further,

[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014); *see also In re Frances J.A.S.*, 213 W. Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child."). Lastly, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

In this case, we find that the circuit court did not err in determining that petitioner failed to successfully complete his improvement period. Although petitioner made some initial progress by participating in adult life skills and parenting classes, attending therapy, and participating in drug screens, CPS workers and service providers testified that petitioner failed to internalize the services provided to him. Additionally, the court found that petitioner was deceitful and dishonest when addressing concerns raised by service providers or the DHHR, rendering services futile.

Further, contrary to his assertions, petitioner's improvement period and parental rights were not terminated as a result of a single incident of domestic violence between petitioner and the mother. Rather, the court considered the incident as a key demonstration of petitioner's multitude of failures to avail himself of services and opportunities to remedy the conditions of abuse and neglect. Also, petitioner's assertions that his home was suitable and that he financially provided for the children's care and wellbeing is contradicted by evidence presented during the proceedings. At a hearing in January of 2021, a CPS worker explained that the parents lied about the food they were feeding the children; misled the DHHR about selling a kitchen table inside the home that reflected their inability to properly manage money; and lied about purchasing and keeping multiple animals, including two dogs, two birds, a cat, and a ferret inside the residence. The worker indicated that the animals further contributed to the home being cluttered, odoriferous,

and unsanitary for the children. Thus, while petitioner completed adult life skills and parenting classes, he struggled to properly manage resources, choosing to spend household income on their numerous pets at the expense of the children's wellbeing—even selling the kitchen table.

Moreover, petitioner's attempts to minimize the incident of domestic violence in February of 2021 as a "single argument between he and his wife when she was caught in the act of being unfaithful to him" ignores the severity of the incident and pattern of anger and domestic violence that continued to escalate during petitioner's improvement period. It was petitioner's physical abuse of then seven-year-old D.R. in May of 2019 which led to the initial petition. Nearly two years later, in February of 2021, petitioner engaged in domestic violence against the mother by removing the license plate to her vehicle, removing the keys from her ignition, attempting to run her vehicle off of the road, threatening to report her vehicle to law enforcement, and compelling her to return home with him. During the dispositional hearing, the mother testified that she was frightened that petitioner would attempt to physically harm her as well. However, the parents continued to deny any issues of domestic violence in their relationship. While petitioner points to his compliance with services and even participation in marriage counseling, the counselor testified that petitioner and the mother failed to fully disclose the domestic violence issues in their relationship. As a result, she was unable to fully address those issues in her counseling with the couple. Petitioner's inability to manage his anger and propensity for violence was not limited to that incident alone. In March of 2021, a CPS worker testified that petitioner became repeatedly and vocally irate with her during a home inspection and continued to lie and be deceitful about the parents' actions. This dishonesty was also documented and reported by service providers, CASA, and the circuit court. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights given his failure to remedy the conditions of abuse and neglect.

In sum, while petitioner made some changes in order to comply with the requirements of his improvement period, he did not modify his behavior or make sufficient improvement to justify the return of the children to the home. "We have recognized that it is possible for an individual to show compliance with specific aspects of the case plan while failing to improve . . . [the] overall attitude and approach to parenting." *In re B.H.*, 233 W. Va. at 65, 754 S.E.2d at 751 (additional quotations and citations omitted). Such is the case here. While petitioner fulfilled some aspects of his improvement period, such as completing adult life skills and parenting classes, complying with drug screens, and visiting with the children, "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Despite petitioner's participation in an improvement period and his completion of certain requirements, we find that sufficient evidence existed to support the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. Accordingly, for the reasons set forth above, we find no error in the circuit court's termination of petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment