**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.J., K.J., and C.J.**

**No. 21-1009** (Kanawha County 21-JA-1, 21-JA-2, and 21-JA-3)

**MEMORANDUM DECISION**

Petitioner Grandmother S.J., by counsel Rebecca Stollar Johnson, appeals the Circuit Court of Kanawha County's November 18, 2021, order denying her motion to reconsider the termination of her guardianship rights to A.J., K.J., and C.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that she had not successfully completed her post-adjudicatory improvement period and in terminating her guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2021, the DHHR filed a child abuse and neglect petition against the children's parents and petitioner, the children's legal guardian, citing substance abuse, a lack of stable housing, and educational neglect. The DHHR alleged that petitioner had a history of drug abuse and that the children had been living in hotels because they lacked a permanent home. According to the petition, the children spent the night in a vehicle on at least one occasion. The DHHR further alleged that the children were truant from school on multiple occasions.

Later that month, the circuit court held a preliminary hearing during which a Child Protective Services ("CPS") worker testified as to the children's disclosures regarding substance

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

abuse, truancy, lack of adequate food, and a transient lifestyle that the children experienced in petitioner's care. Petitioner testified on her own behalf and noted that she had custody of the children because "all four of the parents were really bad drug users." Petitioner further admitted that she lacked a permanent residence for the children and acknowledged that the children did not attend school because she had vehicle troubles and she did not understand how to access their classes remotely using technology. She objected to the removal of the children from her custody and requested services be provided to her. The court found probable cause that the children were abused or neglected because petitioner placed the children in a "transient lifestyle without adequate food or permanent shelter and caused them to be truant from school and exposed to substance abuse." However, the court did order the DHHR to provide petitioner with services, including parenting and adult life skills classes, bus passes, and random drug screens. The court also granted petitioner visitation with the children contingent on negative drug screens.

In February of 2021, the guardian ad litem filed a report indicating that petitioner tested positive for methamphetamine earlier that month, despite her participation in services. Later that month, the circuit court held an adjudicatory hearing wherein the DHHR moved the court to take judicial notice of the CPS worker's testimony at the preliminary hearing. The court granted the DHHR's motion, and no other party offered any testimony or evidence disputing the allegations in the petition. As a result, the court found clear and convincing evidence that petitioner was an abusing and neglectful guardian.

The court held an adjudicatory hearing regarding the children's parents in April of 2021. At the hearing, petitioner motioned for a post-adjudicatory improvement period, requested that the court change her service providers, and sought increased visitation with the children. The court found that petitioner was complying with her services and granted her motion for an improvement period. The court further granted the DHHR and guardian ad litem discretion to increase petitioner's visitation.

The DHHR filed a court summary in May of 2021 indicating that petitioner had been largely compliant in services and that petitioner had tested negative on all her recent random drug screens. However, the DHHR noted that petitioner had ended some of her visits with the children early and had failed to provide adequate food or sustenance for the children during the four-hour visits. The DHHR also noted that petitioner had not yet secured housing or employment. Petitioner reported to service providers that she had been staying with "a new guy" that she had only known for a matter of days. Petitioner was also relying on a service provider for transportation to and from her services, despite receiving a bus pass. Ultimately, however, the DHHR recommended that petitioner's improvement period continue.

The DHHR filed another court summary in August of 2021 indicating that petitioner had been participating in drug screens and noted that petitioner tested positive for methamphetamine and amphetamine on one screen in June of 2021 and methamphetamine on another screen in July of 2021. Further, the DHHR noted that petitioner's phone appeared to be off in June of 2021 and petitioner was not participating in adult life skills or individualized parenting classes. The DHHR explained that petitioner had been participating in some visits with the children but continued to end visits prematurely. In fact, only one visit occurred in June of 2021 due to petitioner's noncompliance in services that month, and that petitioner cancelled a visit in late July of 2021 due

to alleged illness. While petitioner secured adequate housing and employment, the DHHR reported an incident in July of 2021 wherein a CPS worker went to petitioner's residence to deliver a bus pass and observed petitioner's boyfriend, his two children, and two other unidentified persons leaving the apartment, as well as another two unidentified people inside the apartment. The DHHR reported that the unidentified people inside the apartment allegedly attempted to attack petitioner's boyfriend as he was leaving, causing the worker to enter the apartment to intervene. The unidentified individuals then seemed to calm down, gathered their things, and prepared to leave. The worker noted that the persons appeared to be under the influence of drugs. When the worker asked petitioner who the people were, she responded that they were people from "around the area." The worker further noticed that the smoke alarm had been disconnected inside the apartment and informed petitioner that if visits were to resume in the apartment, those individuals could not be around the children and that all safety devices in the home must be properly connected. The DHHR concluded its report by recommending that a dispositional hearing be set, and that petitioner submit to in-home drug screening.

The DHHR filed a further summary report in October of 2021 indicating that petitioner was compliant with services but noted that she tested positive for methamphetamine in late August of 2021. Petitioner claimed that "the methamphetamine result was from her consumption of Red bull." A CPS worker noted that food and drinks will not alter drug screen results. Nevertheless, petitioner told the CPS worker that she had never abused drugs, calling the drugs "some crazy stuff." The DHHR further noted that petitioner was not present for a multidisciplinary team meeting in September of 2021. As a result, the DHHR was recommending termination of petitioner's guardianship rights due to her drug abuse and denial of the same.

Later that month, the circuit court held a final dispositional hearing wherein petitioner moved for a brief continuance "pending [the] results of a hair follicle test" she had taken the same morning that she intended to introduce as evidence. The court denied the motion based upon petitioner's "repeated positive drug screens through these proceedings, and noted her objection." A CPS worker then testified that petitioner had submitted three positive drug screens over the prior months but denied any substance abuse. As a result, the CPS worker explained that she recommended that petitioner's guardianship rights be terminated. Next, petitioner testified that she attributed her positive drug screens to Red Bull consumption and stated that she had stopped consuming the energy drink. She also testified that she had employment and had been maintaining a home and was compliant with all other remedial and reunification services. After hearing testimony, the DHHR moved to terminate petitioner's guardianship rights while petitioner objected and moved for a post-dispositional improvement period. The guardian ad litem joined in the DHHR's motion for termination and objected to petitioner's motion for an improvement period.

After hearing the evidence, the court found that petitioner's "substance abuse and continued denial of same prevents her from being an appropriate guardian for the [] children." The court found that the DHHR "cannot provide any additional services to remedy the conditions of abuse and neglect" and that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse or neglect in the foreseeable future. As a result, the court denied petitioner's motion for a post-dispositional improvement period and terminated her guardianship

3

rights by its October 13, 2021, order.[2] Petitioner further filed a "motion for reconsideration," which the circuit court denied by its November 18, 2021, order. It is from this order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

In her argument on appeal, petitioner contends that the circuit court erred in denying her motion for reconsideration without holding a hearing. According to petitioner, "[e]ven after being provided with the negative hair follicle test, the [circuit c]ourt made no effort to resolve the issue of drug use and simply denied the [p]etitioner's [m]otion for reconsideration without a hearing." First, petitioner states earlier in her brief that she had taken the hair follicle test on the morning of the dispositional hearing and moved to continue the matter to allow for the results of that test, which the court denied. As such, petitioner's hair follicle test was not made part of the record below or considered as evidence by the circuit court. Further, we find that petitioner is entitled to no relief because there is no provision for a motion to reconsider in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, Chapter 49 of the West Virginia Code, or the applicable West Virginia Rules of Civil Procedure. Accordingly, any alleged violation of due process based upon the lack of a hearing on such a motion is misplaced given that the court had no duty to hold a hearing upon a motion for which the law does not provide. Indeed, on appeal to this Court, petitioner cites to no authority that required the court to hold a hearing on her motion for reconsideration, nor does she cite to any authority allowing for the filing of such motion. Therefore, petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in finding that she had not successfully completed her post-adjudicatory improvement period. Petitioner contends that she successfully completed her improvement period by maintaining suitable housing, obtaining employment, and participating in drug screens. Petitioner acknowledges her three failed drug screens but avers that she "was compliant in each and every aspect of her improvement period." Further, petitioner

---

[2]The parents' parental rights were also terminated below. The permanency plan for the children is adoption in their respective foster homes.

maintains that she did not abuse controlled substances, such as methamphetamine, and continues to cite energy drinks as the cause of the positive screens. We disagree and find no merit to petitioner's arguments.

This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Further,

> [i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child.

Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014); *see also In re Frances J.A.S.*, 213 W. Va. 636, 646, 584 S.E.2d 492, 502 (2003) ("The question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child."). Lastly, we note that West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

In this case, the court did not err in finding that petitioner failed to successfully complete her improvement period. Although petitioner made some initial progress by securing housing and employment and visiting with the children, she continued to test positive for controlled substances and to deny her drug abuse despite positive drug screens. Additionally, despite having failed to abide by the terms and conditions of her improvement period, petitioner was granted several opportunities to continue the improvement period to correct the conditions of abuse and neglect but eventually stopped complying with parenting and adult life skills classes and cut short her visits with the children. Indeed, the circuit court stated at disposition that the DHHR could not "provide any additional services to remedy the conditions of abuse and neglect" and that petitioner's "substance abuse and continued denial of same prevents her from being an appropriate guardian for the [] children."

It is also evident that the petitioner failed to fully acknowledge the conditions of abuse and neglect. While petitioner produced many negative drug screens throughout the proceedings, she tested positive for methamphetamine in February of 2021, June of 2021, July of 2021, and August of 2021. Yet, rather than acknowledging her substance abuse and seeking out treatment services, petitioner denied any substance abuse and continues to do so on appeal. Petitioner blamed the consumption of energy drinks as causing her to falsely screen positive, despite providing no evidence of the same. Further, petitioner failed to acknowledge other issues that affected her ability to safely parent the children. Upon a CPS worker arriving at petitioner's home in July of 2021 in order to deliver her bus passes, the worker observed several unidentified individuals attacking petitioner's boyfriend before leaving her home. According to a DHHR court summary, the worker noted that the individuals appeared to be under the influence of drugs. However, the worker noted that petitioner downplayed the significance of the incident and did not identify the individuals. Accordingly, we find no error in the circuit court's finding that she had not successfully completed her post-adjudicatory improvement period.

In sum, while petitioner made some changes in order to comply with the requirements of her improvement period, she did not modify her behavior or make sufficient improvement to justify the return of the children to the home. "[W]e have recognized that it is possible for an individual to show compliance with specific aspects of the case plan while failing to improve . . . [the] overall attitude and approach to parenting." *In re B.H.*, 233 W. Va. at 65, 754 S.E.2d at 751 (additional quotations and citations omitted). Such is the case here. While petitioner completed some aspects of her improvement period and complied for some time with service providers, "courts are not required to exhaust every speculative possibility of parental improvement before terminating [guardianship] rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Despite petitioner's participation in an improvement period and her completion of certain requirements, we find that sufficient evidence existed to support the court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was in the children's best interests. Accordingly, for the reasons set forth above, we find no error in the circuit court's termination of petitioner's guardianship rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 18, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn